In re Jeffrey CHRISTENSEN, Debtor.

Nos. 393–33646–H13, CV 94–242–PA.

United States District Court,
D. Oregon.

April 29, 1994.

Jonathan G. Basham, Bend, OR, for debtor.

Daniel H. Rosenhouse, Asst. Atty. Gen., Portland, OR, for trustee.

## OPINION

PANNER, District Judge.

Appellant Jeffrey Christensen appeals the November 1, 1993 order of the Bankruptcy Court denying his motion for sanctions against Respondent Oregon Construction Contractors Board[1] and denying his contention that Respondent's Final Order in claim No. 71836–103 is void. I have jurisdiction pursuant to 28 U.S.C. § 158(a) and Bankruptcy Rules 8002(a) and 9006(a). The decision of the Bankruptcy Court is affirmed in

---

1. Appellant does not contest that portion of the Bankruptcy Court's order denying his motion for sanctions against Bend Decorating Studio.

part and reversed in part. Respondent's order of August 17, 1993 violated the automatic stay and was void *ab initio*. Appellant's motion for sanctions is denied. Each party will pay its own costs.

## BACKGROUND

Oregon law requires construction contractors to post a surety bond. ORS 701.085. Aggrieved suppliers or customers may file a claim against the contractor with the Oregon Construction Contractors Board. ORS 701.-140. The Board determines the amount the contractor must pay. ORS 701.140–.150. A final order of the Board that remains unpaid for 10 days constitutes a judgment in favor of the claimant against the "person." ORS 701.150(2), 701.170(1). The term "person" is not defined, but apparently refers to the contractor the claim was brought against. If the contractor fails to pay the order within ten days, the surety must pay the judgment. ORS 701.140, 701.150(1). The surety is not joined as a party, but may intervene. ORS 701.145(6). The surety is bound by the final order. *Id.*

Appellant posted the required bond. Bend Decorating Studios ("Bend") filed a claim against Appellant with the Contractors Board. Appellant subsequently filed for bankruptcy. The Contractors Board then ordered Appellant to pay Bend $4,457.26. Appellant contends that order violated the automatic stay imposed by 11 U.S.C. § 362(a)(1). He moved to set aside the order and impose sanctions on the Contractors Board. The Bankruptcy Court denied the motion. This appeal followed. Respondent now concedes its order is void as to Appellant, but argues it is still entitled to collect

from the surety.[2] Respondent also contends the Eleventh Amendment confers immunity from sanctions.

## DISCUSSION

The Bankruptcy Court relied on its earlier precedents holding the Contractors Board is not subject to the automatic stay. *See In re Apache Construction, Inc.*, 34 B.R. 415 (Bankr.D.Or.1983); *In re Fintel*, 10 B.R. 50 (Bankr.D.Or.1981). The rationale for those decisions is that the Contractors Board is exempt from the stay pursuant to 11 U.S.C. § 362(b)(4) or, alternatively, that the surety bond is not property of the debtor's estate.

*1. Exemption Under § 362(b)(4):*

■ Section 362(b)(4) provides that the automatic stay does not apply to any proceeding "by a governmental unit to enforce such governmental unit's police or regulatory power." Statutory exceptions to the automatic stay are interpreted narrowly. *In re Glasply Marine Industries, Inc.*, 971 F.2d 391, 394–95 (9th Cir.1992). The exemption does not apply where the governmental unit is primarily seeking to enforce pre-petition obligations of the debtor towards either the governmental unit or a third party. *In re Massenzio*, 121 B.R. 688, 691–92 (Bankr. N.D.N.Y.1990) (automatic stay prevents state from revoking insurance agent's license for failure to pay pre-petition obligations owed to third party). *Cf. In re Fitch*, 123 B.R. 61, 63 (Bankr.D.Idaho 1991) (state could proceed with hearing to revoke insurance agent's license because primary objective was to prevent fraud and punish misconduct, not recover funds for benefit of state or third party).[3] This is called the "Pecuniary Purpose Test."

---

**2.** Appellant lacks standing to challenge the validity of the order as to the surety. This appeal is not moot, though, because Appellant also seeks sanctions for violation of the automatic stay.

**3.** The exemption to the automatic stay under § 362(b)(4) has also been held inapplicable where the state threatened to revoke a driver's license unless he paid overdue tickets, *In re Colon*, 102 B.R. 421, 429 (Bankr.E.D.Pa.1989) (subsequent history omitted), attempted to recover welfare payments, *In re Ellis*, 66 B.R. 821 (N.D.Ill.1986), or suspended a driver's license and automobile registration in order to coerce the debtor into posting a bond to guarantee pay-

ment of the debtor's pre-petition obligations to a third party resulting from an automobile accident, *In re Kuck*, 116 B.R. 821, 824 (Bankr. S.D.Ala.1990). *See also In re Charter First Mortgage, Inc.*, 42 B.R. 380, 382 (Bankr.D.Or.1984) (in determining whether a particular action falls within § 362(b)(4)'s "police or regulatory power" exception to the automatic stay, the court must examine the specific acts the government wishes to carry out and determine whether execution would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate.)

The § 362(b)(4) exemption to the automatic stay has also been held inapplicable when the governmental unit is merely adjudicating private rights. *In re Dan Hixson Chevrolet Co.*, 12 B.R. 917, 920 (Bankr. N.D.Tex.1981) (proceedings before Texas Motor Vehicle Commission in complaint filed by franchisor seeking to terminate franchise agreement because franchisee filed for bankruptcy are subject to automatic stay); *In re 1736 18th Street N.W. Ltd. Partnership*, 97 B.R. 121, 123 (Bankr.D.D.C.1989) (action by tenants before District Rent Administrator to enforce private rights arising under tenant/landlord laws subject to automatic stay).[4] This is called the "Public Policy Test."

The proceeding before the Contractors Board runs afoul of both tests. Respondent was acting in the public interest pursuant to its statutory mandate, but that is true of virtually any action taken by a government agency or public official. It is not enough that Respondent's general purpose was to further consumer protection. Respondent was adjudicating private rights (a dispute between a supplier and contractor) and its immediate purpose was to assist a private citizen recover a pre-petition obligation of the debtor. I hold that § 362(b)(4) does not exempt proceedings before the Contractors Board under ORS Chapter 701 from the automatic stay of the Bankruptcy Act.[5]

2. *Not the Debtor's Property:*

The Contractors Board argues this proceeding was not subject to the automatic stay because a surety bond is not the debtor's property, citing *In re Buna Painting &*

*Drywall Co., Inc.*, 503 F.2d 618 (9th Cir.1974) and *Matter of Lockard*, 884 F.2d 1171 (9th Cir.1989). Both cases are distinguishable.

*Buna* stands for the proposition that a bankruptcy trustee may not require a surety to pay into the bankruptcy estate the penal sums on a contractors' licensing bond because the bond is not property of the bankrupt but rather a third party beneficiary contract to reimburse people harmed by the bankrupt. *Buna*, 503 F.2d at 619. The issue in *Lockard* was whether a creditor was barred from prosecuting an action *directly against the surety*. The claimant had brought an action against the debtor and the surety, but dismissed the former after he filed for bankruptcy and thereafter proceeded solely against the surety. *Id.* at 1173.

That option does not exist here. Chapter 701 does not authorize Respondent to proceed against the surety unless it has first found Appellant liable and fixed the amount of damages, and Appellant has timely failed to pay that obligation. Bend's claim was not against the surety but against the debtor personally. The surety is not named as a defendant or mentioned anywhere in the Contractors Board's Final Order. The Final Order contains a finding that Appellant owes the claimant $4,457.26, and orders him to pay that sum to claimant. The Order also recites that "[u]npaid final orders constitute judgments as provided by ORS 701.170." This judgment is assessed against the debtor personally. The surety is liable only if the debtor fails to timely pay that judgment. ORS 701.140. The fact that the surety may

---

4. *See also United States (EPA) v. Environmental Waste Control, Inc.*, 131 B.R. 410, 422 (N.D.Ind. 1991), *affirmed*, 973 F.2d 1320 (7th Cir.1992); *In re Kuck*, 116 B.R. at 824; *In re Charter First Mortgage, Inc.*, 42 B.R. at 383 (court must distinguish between those proceedings which fulfill a public policy and those which adjudicate private rights). *Cf. NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942–43 (6th Cir.1986) (automatic stay did not bar NLRB from proceeding with hearing on unfair labor practices, even though the decision could result in imposition of penalties and judgment for backpay owed employees; NLRB was primarily seeking to enforce labor laws and fix penalties for violations, not adjudicate purely private claims).

5. On appeal, Respondent argues that because the private party filed its claim with the Contractors Board before the debtor filed his bankruptcy petition, Respondent's August 13, 1993 order was part of a "continuation" of a proceeding and is therefore specifically exempted from the stay by the language of § 362(b)(4). Respondent's argument tortures the language of the statute. Section 362(b)(4) provides that the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit *to enforce such governmental unit's police or regulatory power.*" (emphasis added). Respondent's construction of the statute conveniently omits the limiting language at the end of the sentence which modifies the phrase "continuation of a proceeding."

ultimately be liable does not alter the fact that this was first and foremost an action against the debtor to recover upon pre-petition obligations, and the Order constitutes a judgment against Appellant personally.

■ The August 17, 1993 Final Order was a continuation of a proceeding adjudicating pre-petition obligations of the debtor. The automatic stay does more than just guard against new claims. The automatic stay gives the debtor a temporary breathing spell from creditors by stopping all collection efforts, all harassments, and all foreclosure actions so the debtor may attempt repayment or reorganization. *In re Computer Communications, Inc.*, 824 F.2d 725, 729 (9th Cir.1987); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194 (3d Cir. 1991). The automatic stay also protects creditors by preventing the estate from being eaten away by lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among creditors. *Maritime Elec.*, 959 F.2d at 1194. Requiring the debtor to defend himself in an action for damages before the Contractors Board, and awarding damages against him, is contrary to those objectives. *See In re Joe DeLisi Fruit Co.*, 11 B.R. 694, 696 (Bankr.D.Minn.1981).

Respondent argues that an underlying purpose of the surety bond is to protect the public from contractors who become bankrupt. However laudatory the state's objectives, it may not circumvent the provisions of the Bankruptcy Act. If Respondent believes the proceeding before the Contractors Board will have a negligible impact upon the debtor's estate and is otherwise consistent with the purposes of the Bankruptcy Act, procedures exist to obtain relief from the automatic stay. I hold that proceedings before the Contractors Board pursuant to Chapter 701 are subject to the automatic stay. I decline to follow *Apache Construction* and *Fintel* to the extent they hold otherwise.

3. *Relief:*

■ Actions taken in violation of the automatic stay are void *ab initio*. *In re Shamblin*, 890 F.2d 123, 125 (9th Cir.1989). Respondent's order of August 17, 1993 is there-fore a nullity. Appellant also seeks sanctions against Respondent. 11 U.S.C. § 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section *shall* recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." (emphasis added).

■ Respondent acted in good faith, relying upon prior decisions by the Bankruptcy Court. That is not enough to preclude a finding of a willful violation. In the Ninth Circuit, a "willful violation" does not require a specific intent to violate the automatic stay. *In re Abrams*, 127 B.R. 239, 243 (Bankr. 9th Cir.1991); *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989). It is enough that Respondent knew of the automatic stay and its actions that violated the stay were intentional. *Id.*

Respondent contends it first learned of the stay after the proceeding was complete, so the violation was not knowing. After learning of the stay, however, Respondent continued to insist the proceeding was valid and refused to vacate its order of August 17, 1993. Appellant contends that is an independent violation of the automatic stay. There is some authority for that contention. *See, e.g., In re Gustafson*, 111 B.R. 282, 287 (Bankr. 9th Cir.1990), *reversed on other grounds*, 934 F.2d 216 (9th Cir.1991); *In re Johnson*, 18 B.R. 755, 757 (Bankr.S.D.Ohio 1982). I do not decide this question because I conclude that even if Respondent violated the automatic stay, it is not liable for damages, attorney's fees, or other sanctions.

■ The Eleventh Amendment prohibits a federal court from awarding compensatory or punitive damages against an arm of the state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Bankruptcy Act does not abrogate the state's Eleventh Amendment immunity. *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989); *In re Pearson*, 917 F.2d 1215 (9th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 1291, 117 L.Ed.2d 514 (1992). Appellant argues that the Oregon Tort Claims Act, ORS 30.260–.300, waives the state's Eleventh Amendment rights. I disagree. Oregon has

waived its sovereign immunity, but not its Eleventh Amendment rights. The former confers immunity from suit in *any* court. The latter confers immunity from suit in *federal* court. Oregon has consented to suit, but only in its own courts.

Although the Eleventh Amendment precludes an award of damages against the state, that does not end the matter. The sanctions requested by Appellant include attorney's fees incurred by Appellant in seeking a declaration that Respondent's August 17, 1993 is void and unenforceable. An award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment. *Missouri v. Jenkins,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989); *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1976). Such an award is not compensating the plaintiff for the injury that first brought him to court, but reimbursing him for expenses incurred in seeking prospective injunctive relief. *Hutto,* 437 U.S. at 695 n. 24, 98 S.Ct. at 2576 n. 24 (analogizing to award of costs to prevailing party).

Although *Hutto* and its progeny would seem to authorize an award to Appellant of attorney's fees incurred in prosecuting this action, the Ninth Circuit recently held otherwise. *In re Gustafson,* 934 F.2d 216 (9th Cir.1991) (Eleventh Amendment bars bankruptcy court from requiring state to compensate debtor for attorney's fees incurred by debtor due to state's violation of the automatic stay). *Gustafson* is perplexing because it fails to even cite *Hutto,* let alone distinguish it. The holding in *Gustafson* is also in conflict with the conclusion reached by several other courts that have recently addressed this issue. *Cf. In re Colon,* 114 B.R. 890 (Bankr.E.D.Pa.1990); *In re James,* 112 B.R. 687, 699 (Bankr.E.D.Pa.1990); *In re Kuck,* 116 B.R. at 825–26; *In re Ellis,* 66 B.R. at 822–23 n. 4 (all holding Eleventh Amendment does not bar award of attorney's fees and costs to compensate debtor for such expenses

incurred because of state's violation of the automatic stay).

 I need not resolve the tension between *Gustafson* and *Hutto* because, even assuming the Eleventh Amendment permits an award of attorney's fees and costs, there is an independent basis for denying an award in the present case. Appellant acknowledges Respondent was acting in a quasi-judicial capacity when it adjudicated Bend's claim against Appellant. Appellant's Reply Brief at 4. Judges are absolutely immune from civil liability for damages for their judicial acts. *Mullis v. Bankruptcy Court (D. Nev.),* 828 F.2d 1385, 1388 (9th Cir.1987), *cert. denied,* 486 U.S. 1040, 108 S.Ct. 2031, 100 L.Ed.2d 616 (1988). Accordingly, a state court whose actions are later determined to have violated the automatic stay is not subject to sanctions under the Bankruptcy Act.[6]

The Contractors Board is not a court. Nonetheless, judicial immunity has gradually been extended to some individuals or organizations acting in a quasi-judicial capacity to adjudicate private claims, on the theory that the same considerations that counsel in favor of immunity for judges apply equally to persons acting in a similar capacity. Thus arbitrators have been held entitled to absolute immunity, even though they are private citizens. *See, e.g., Corey v. New York Stock Exchange,* 691 F.2d 1205 (6th Cir.1982); *Cahn v. International Ladies' Garment Union,* 311 F.2d 113, 114–25 (3d Cir.1962); *Tamari v. Conrad,* 552 F.2d 778, 781 (7th Cir. 1977); *Raitport v. Provident Nat. Bank,* 451 F.Supp. 522, 527 (E.D.Pa.1978). To the extent the Contractors Board was acting in a quasi-judicial capacity adjudicating a private claim brought by a supplier against a contractor, the Board is entitled to immunity.[7]

 A judge is not denied immunity because the action he took was in error, or was in excess of his authority, but only when he has acted "in the clear absence of all jurisdiction." *Mullis,* 828 F.2d at 1388. The Con-

---

**6.** I do not consider whether sanctions would be permissible if the state court knowingly defies a direct order from the federal court. *See Hutto,* 437 U.S. at 691, 98 S.Ct. at 2574 (discussing power of federal court to enforce its orders).

**7.** I do not suggest that immunity attaches to all quasi-judicial activities, or that all activities of the Contractors Board are so protected. My holding is limited to the specific facts of this case.

tractors Board relied upon previous decisions of the Bankruptcy Court in this District. Although I have determined those decisions were erroneous, the Contractors Board did not act "in the clear absence of all jurisdiction."

 Although judicial immunity protects against an award of damages, there are circumstances where a judge may be mandamused or enjoined. *See Mullis,* 828 F.2d at 1391–93. Notwithstanding that the Eleventh Amendment permits an award of attorney's fees ancillary to a grant of prospective injunctive relief, a party obtaining a writ of mandamus may not recover attorney's fees or costs from the court whose order has been reversed. The purposes of judicial immunity would be thwarted if a judge were liable for a party's attorney's fees should an appellate court later disagree with a ruling the judge had made in the case. The same rule should apply to individuals or organizations protected by quasi-judicial immunity. *See Tamari,* 552 F.2d at 781 (individuals cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit).

I hold that the Contractors Board was acting in a quasi-judicial capacity adjudicating private claims, and is therefore immune from liability for either damages or attorney's fees for its actions in connection with this case.[8]

### CONCLUSION

The Bankruptcy Court's order of November 1, 1993 is affirmed in part, and reversed in part. Respondent's order of August 17, 1993 violated the automatic stay and was void *ab initio.* Appellant's motion for sanctions is denied. Each party to pay its own costs and attorney's fees on appeal.

---

**8.** It has been suggested that quasi-judicial actors should be given only qualified immunity from suit instead of absolute immunity. *See Watts v. Burkhart,* 978 F.2d 269, 278 (6th Cir.1992) (Martin, J., dissenting). For purposes of this case, it is not necessary for me to decide the extent of immunity that attaches to the Contractors Board

because Appellant could not prevail under either standard. Respondent acted in accordance with previous decisions of the Bankruptcy Court in this District. Although those decisions have now been found wanting, Respondent did not violate Appellant's clearly established rights, constitutional or otherwise.